TILLMAN PEARSON, Judge.
The two appeals considered in this opinion are: (1) Case No. 64-4-90 which is an appeal from a chancery decree wherein the court reformed a promissory note, and (2) Case No. 64-491 which is an appeal from an order dismissing a common-law action on the note as originally framed. The final judgment in the common-law action was entered solely on the basis of the final decree in the chancery action. Therefore, we may consider both appeals as depending upon a correctness of the final decree in the chancery action.
The common-law action was instituted first. In this action Jack J. Freitag sued Phillip E. Simon and Benjamin Cohen as the makers of a note in the principal amount of $100,000 dated July 30, 1963. The note provided for payment in the following manner : “The sum of $2500 on August 30, 1963, and a like sum of $2500 on the 30th day of each month until July 30, 1964, when the entire unpaid balance plus accrued interest shall be paid in full.” The complaint alleged that Simon and Cohen had defaulted in the payment of installments due August 30, 1963, and September 30, 1963, and sought to accelerate the maturity date for the unpaid balance.
*919 Subsequent to the filing of the common-law action and after the filing of an answer therein, the defendants instituted the chancery proceeding referred to above. The •complaint in the chancery suit alleged that the note upon which suit was brought in the common-law action was delivered conditionally
“ * * * with the proviso that this note was not to be used or negotiated in any way without a specific promise by any holder of the note that said note would be guaranteed renewable so that under no circumstances would the Plaintiffs, or either of them, be obligated to pay more than the sum of Two Thousand Five Hundred Dollars ($2,-500.00) per month until the total sum, without interest, of One Hundred Thousand Dollars ($100,000.00) was paid.”
The complaint then alleged that the note had been negotiated to Jack J. Freitag and .also acknowledged the common-law action "brought by Freitag against Simon and Cohen. The complaint further alleged that Simon and Cohen were ready, able and willing to pay the installments for August, September, October and November (which were then past due) “provided said note is reformed into a three (3) year note where the sole obligation of the plaintiffs is to pay the sum of Two Thousand Five Hundred Dollars ($2,500.00) per month until the sum • of One Hundred Thousand Dollars ($100,-000.00) is paid with no interest.”
A final judgment had not been entered in the common-law action at the time the final decree was entered in the chancery cause. The chancellor entered his final decree in which he found:
“1. That the Court has jurisdiction of the parties-plaintiff and the parties-defendant, and the subject matter of this cause.
“2. That the plaintiffs have proved, by a preponderance of the evidence, the material allegations of their complaint.
“3. That a reformation should be granted to the plaintiffs in this cause.
“4. That plaintiffs’ offer to do equity as reflected in the complaint and proofs was in good faith and sufficient in equity as a predicate for equitable relief, and that plaintiffs were justified in their refusal to pay on the note (plaintiffs’ exhibit 6) providing for payment in one year, upon defendants’ refusal of a requested agreement between the parties, for $2,500.00 monthly payments of principal until paid, as herein found to be the true terms of the note on such matter.
“5. That Defendant JACK J. FREI-TAG is the present owner and holder of said note.
“6. That the reformed note should be as hereinafter set forth.”
Thereafter the same chancellor as trial judge in the law action entered an order dismissing the law action upon the note “in view of the reformation granted in said chancery case.”
A large portion of the record concerns the lengthy negotiations out of which the two suits arose. In viewing this record, we are cognizant of the fact that it is our duty to review the record in the light most favorable to the final decree. Bates v. Brady, Fla.App.1961, 126 So.2d 750. The determinative question as suggested by the appellee is:
“DOES THE RECORD OF THIS CAUSE SUPPORT A FINDING BY THE CHANCELLOR THAT EQUITY REQUIRED THE REFORMATION OF A WRITTEN INSTRUMENT IN ORDER TO EXPRESS THE TRUE INTENTION, AGREEMENT, AND UNDERSTANDING OF THE PARTIES ?”
Simon and Cohen were the purchasers of an interest in bank stock which interest was held by Robert R. Frank, Jack J. Freitag and others. In order that the sellers could *920 secure cash out of the purchase, Simon and Cohen agreed to give Frank a note which would be acceptable for discount at a bank. It subsequently appeared that a three-year note was not acceptable for discount. Thereupon, Simon and Cohen gave the note dated July 30, 1963 (which was the subject of the common-law action) but with an understanding that regardless of the terms of the note, Simon and Cohen would be obligated to pay no more than $2500 a month. The makers were assured that this obligation would be accomplished by a renewal of the note at the end of the first and second years.
No claim of fraud or mistake is asserted by the appellees, nor does the testimony show that the note was negotiated to a third person. It appears that Freitag is one of the original real parties in interest and the current holder of the note. The record reveals that Freitag, Frank and at least two other persons actually gave the consideration in return for the note. The appellees admit that the note in question was given to Frank as trustee and agent for Freitag and others. We hold that Frank’s indorsement of the note over to Freitag was not a “negotiation” of the note within the contemplation of that term by the parties to the collateral oral agreement. It should be emphasized that all parties concerned were well aware of the facts as set forth above. Freitag, as payee, brought suit when the makers failed to make either of the first two payments called for by the note. The appellees allege that they would not make any payments until they received from Freitag a guarantee that the note would be renewable, for fear the payments would constitute their ratification of the note as encompassing the entire agreement between the parties.
The appellant urges that the reformation of a written instrument can only be granted where the instrument fails to express the intentions of the parties thereto as a result of accident, inadvertence, mistake, fraud or inequitable conduct. As authority therefor the appellant cites: Camichos v. Diano Stores Corporation, 157 Fla. 349, 25 So.2d 864 (1946). The appellant, furthermore, contends that the record is void of any showing of accident, inadvertence, mistake, fraud or inequitable conduct.
The appellee acknowledges the validity of' appellant’s contentions, but urges that a court of equity, as a court of conscience,, may not be shackled by written rules and that the power of equity to reform an instrument extends to any case where it is-necessary to reform the instrument to prevent manifest injustice and to express the true intent of the parties. As authority therefor the appellee cites: Bevis Construction Co., Inc. v. Grace, Fla.App.1961, 134-So.2d 516; and Roberts v. Pfeiffer, Fla.App.1961. 135 So.2d 246. It should be noted, however, that these cases allowed reformation of an instrument not merely to-express the true intention of the parties but because of a mutual mistake.
In order to determine whether courts of equity have in the past exercised the jurisdiction which the appellee claims was properly exercised in this case, we must turn to-the historical development of equity as a. handmaiden of the law. The extraordinary power of the chancellors to reform written-instruments grew as an adjunct to the commercial law of England in order to provide-a remedy in cases of manifest injustice. Nevertheless, these powers were exercised' in accordance with the axioms of equity and there existed many cases in which the chancellors found they could not afford the-relief prayed because there was no historical basis for their action. In other words,, the power of a chancellor has not been considered to be unfettered so that he could decide every case in accordance with his personal ideas of justice. In order to exercise the extraordinary powers of equity upon a contract sought to be reformed, it was. necessary for certain conditions to be shown to exist. These conditions were fraud, mistake or overreaching.
*921 During the centuries that have followed, it has seldom been urg-ed that the authority of a chancellor is such that he need mot proceed in accordance with the histori•cal grounds for relief. We conceive appel-lees’ suggestion here to be that a chancery ■court may proceed to reform any contract if, after examining all of the available evidence as to its inception, he finds that the •contract is not written in exact accord with the real intentions of the parties. We must reject this interpretation of the law and we Fold therefore that in the absence of a ■showing of fraud, mistake or overreaching, a court of equity may not reform a contract.
We turn now to one other aspect of these appeals which we think demonstrates the impropriety of the injection of extraordinary equitable powers in order to enforce, what the chancellor conceived to be, the intentions of the parties in the absence of a ground for equity jurisdiction. It is tacitly agreed by the parties before us that the note which the chancellor finally drew is a composite note and does not represent any single understanding at any definite time between the parties. For example, the conformed note contains an acceleration clause, whereas a reading of the note dated July 30, 1963, discloses that there is, in effect, no provision in the note for acceleration of the unpaid balance upon a default in payments, nor does it appear that such an acceleration was discussed or within the contemplation of the parties at the time this note was executed. Furthermore, the conformed note provides that interest shall be payable monthly, whereas the note of July 30, 1963, although it contains a provision for the payment of interest, does not provide for such on a monthly basis. The appellee on the other hand contends that the intention was to pay no interest on the note. We do not say that these changes to the note are inequitable, but we must point out that they are not supported by the record as having been within the contemplation of the parties.
Appellees came into the court of equity seeking to reform an instrument under which they conceded that the sum of $2,-500.00 was due for each of four past months. No tender was made, although it was stated in the complaint that the makers stood ready, willing and able to make payment when the note was reformed. Their position in the matter was based upon the proposition that a note which is not in accord with the agreement of the parties is void and that nothing is due thereunder until it is reformed. We do not think this position is sustainable in view of the decided cases which hold that a plaintiff seeking reformation must show that he has done equity or else relief will be denied him. See: Smith v. Pattishall, 127 Fla. 474, 176 So. 568; 129 Fla. 498, 176 So. 568 (1937); 45 Am.Jur., Reformation of Instruments, § 73 (1943) ; 76 C.J.S. Reformation of Instruments § 34 (1952). In the instant case the only way in which the appellees could have demonstrated their willingness to do equity and relieve themselves of the apparent default on their written instrument would have been to make a tender into court of the sums admittedly due. Cf. Kreiss Potassium Phosphate Co. v. Knight, 98 Fla. 1004, 124 So. 751 (1929); Masser v. London Operating Co., 106 Fla. 474, 145 So. 72, 79 (1932).
Having reached the conclusions: (1) that the chancellor exceeded the jurisdiction of a court of equity in reforming an instrument where there was no allegation or proof of the traditional grounds for reformation, and (2) that the plaintiffs in the chancery action failed to demonstrate their willingness to pay the amounts due by a tender thereof, we find it necessary to reverse the final decree appealed and the order dismissing the common-law action. We remand both causes to the circuit court with directions first to dismiss the chancery action and second, to proceed with the trial of the common-law action.
Reversed and remanded.